IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| DARLENE FLETCHER,<br>administratrix of the<br>estate of Frank Carter,<br>deceased; KWAMIKA FLETCHER,<br>individually; and ROSITA<br>BOYD, individually,<br><br>    Plaintiffs,<br><br>    v.<br><br>COOPER TIRE & RUBBER<br>COMPANY, a foreign<br>corporation; ROBERT<br>SIMMONS d/b/a Simmons Used<br>Cars; and the ESTATE OF<br>TARA DENITA SANDERS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.
2:13cv156-MHT
(WO)

OPINION AND ORDER

Asserting state-law claims arising out of a one-car accident, the plaintiffs (administratrix of the estate of Frank Carter, Kwamika Fletcher, and Rosita Boyd) initially filed this lawsuit in state court against the defendants (Cooper Tire & Rubber Company, Robert Simmons (d/b/a Simmons Used Cars), and the estate of Tara Denita

Sanders).[1]   Carter, Fletcher, Boyd, and Sanders were injured or killed.  Pursuant to 28 U.S.C. § 1441, Cooper Tire removed this lawsuit from state to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332.

This matter is now before the court on the plaintiffs' motion to remand.  For the reasons that follow, the motion will be denied.


## I. REMAND STANDARD

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  A federal court may hear a case only if it is authorized to do so by federal law.  Kokkonen,

---

1.   While the plaintiffs named the estate of Tara Denita Sanders as a defendant, Sheryl Smith (in her capacity as administratrix of the estate of Tara Denita Sanders) responded with an answer to the complaint and a crossclaim against Cooper Tire.  Because the plaintiffs are the ones who initiated this lawsuit, the court will refer to the defendant as the estate of Tara Denita Sanders, rather than as Sheryl Smith as administratrix of the estate of Tara Denita Sanders.

511 U.S. at 377.   The party seeking removal has the burden of establishing it.  <u>Burns</u>, 31 F.3d at 1095.   The removal statute must be strictly construed because it raises significant federalism concerns.  <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100 (1941).   All doubts about federal-court jurisdiction should be resolved in favor of a remand to state court.   <u>Burns</u>, 31 F.3d at 1095.

## II. BACKGROUND

This case involves a one-car accident in which all persons riding in the car had familial connections. Driving the car was Sanders, who is now deceased.   Her estate has been named as a defendant; she is charged with contributing to the accident through unsafe driving.   The passengers were Sanders's husband, Carter, who is also now deceased, and two nieces, Fletcher and Boyd. Fletcher, Boyd, and the Carter estate administratix are all plaintiffs.   They claim that besides Sanders (whose

3

estate is named as a defendant), two other parties (both
named as defendants too) contributed to the accident:
Cooper Tire is charged with manufacturing a defective
tire that was a substantial cause of the accident, and
Simmons, who sold Carter the car and provided subsequent
maintenance, is charged with negligently failing to have
discovered the defect in the tire or some other dangerous
condition when he should have done so.  The Sanders
estate has filed a crossclaim against Cooper Tire that is
essentially identical to the plaintiffs' claim that the
company manufactured a defective tire.


                        III. DISCUSSION

    In removing the state-court lawsuit to this federal
court pursuant to 28 U.S.C. § 1441, Cooper Tire invoked
this court's diversity-of-citizenship jurisdiction under
28 U.S.C. § 1332.  In order for diversity jurisdiction to
be proper, there must be complete diversity between the
parties, which means that no plaintiff may be a citizen

                              4

of the same State as any defendant.  <u>Strawbridge v. Curtiss</u>, 7 U.S. 267 (1806).  Here, there is not complete diversity.  While Cooper Tire is a citizen of Delaware and Ohio, all three of the plaintiffs and two of the defendants (Simmons and the Sanders estate) are all citizens of Alabama.

Cooper Tire contends that Simmons and the Sanders estate, the two Alabama defendants, were fraudulently joined to defeat diversity jurisdiction; that is, the company argues that the plaintiffs do not actually intend to pursue claims against Simmons and the Sanders estate in good faith, but have rather named them as defendants solely for the purpose of defeating complete diversity. <u>See, e.g.</u>, <u>Henderson v. Washington Nat. Ins. Co.</u>, 454 F.3d 1278, 1281 (11th Cir. 2006) (discussing fraudulent joinder).  If Simmons and the Sanders estate were fraudulently joined as Cooper Tire alleges, their citizenship is not considered for the purpose of determining diversity jurisdiction.  <u>See</u> <u>id</u>.

A removing party who contends that a defendant has been fraudulently joined carries a "heavy" burden of proof.  Id.  There are three ways a party charging fraudulent joinder may satisfy its burden: (1) by establishing that "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) by establishing "outright fraud in the plaintiff's pleading of jurisdictional facts"; or (3) by establishing that "a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and [that] the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant."  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

In making that determination, the court must examine the plaintiff's pleadings at the time of removal, supplemented by any affidavits, deposition transcripts, and other evidence submitted by the parties.  Legg v.

Wyeth, 428 F.3d 1317, 1322-23 (11th Cir. 2005).[2]   The
court must resolve all genuine factual disputes in favor
of the plaintiffs.   Id.   Likewise, if the plausibility of
the plaintiffs' claims depends on disputes of law, the
court must resolve those legal disputes in favor of the
plaintiffs as well.   Crowe v. Coleman, 113 F.3d 1536,
1538 (11th Cir. 1997).


### A. The Estate of Tara Denita Sanders

First, the court will determine whether "there is [a]
possibility that the plaintiff[s] can prove a cause of
action against" the Sanders estate.   Triggs, 154 F.3d at

---

2.   Throughout their briefing, the plaintiffs insist
that the court should look to nothing more than their
complaint to determine whether they have asserted a
plausible claim.   See, e.g., Pls.' Br. (Doc. No. 30) at
8-9 (arguing that the court cannot find fraudulent
joinder because the "complaint states a cause of
action").   No matter how many times the plaintiffs repeat
it, that is simply not the law.   The Eleventh Circuit
Court of Appeals has explained on numerous occasions that
fraudulent joinder decisions "must be based upon the
plaintiff's pleadings at the time of removal,
supplemented by any affidavits and deposition transcripts
submitted by the parties."   Legg, 428 F.3d at 1322
(emphasis in original).

1287.  In this lawsuit, the plaintiffs charge decedent Sanders with unsafe driving that contributed to the accident.  In support, they have submitted an accident report stating that Sanders "over steered" before she "lost control" of the vehicle.  Ala. Unif. Traffic Crash Report (Doc. No. 14-2).  If there is admissible evidence to support the contention contained in the accident report, it would be plausible that the plaintiffs may receive a judgment against the estate.  The report alone, however, is not enough since it is inadmissible hearsay.  See Fed. R. Evid. 801(c).  And here, the plaintiffs have shown no corroborating evidence to support the report's hearsay.  In other words, the record is devoid of admissible evidence that the claim against the Sanders estate has even plausible merit.

In fact, to the extent that the record contains any admissible evidence relating to Sanders's possibly unsafe driving, the evidence is to the contrary.  During their depositions, the plaintiffs in this case expressed

8

surprise and confusion about the fact that they had sued the estate of their family member. Boyd, who rode in the car, testified that she did not think her aunt Sanders, the driver, "did anything wrong" or "caused the accident in any way." Boyd Dep. (Doc. No. 1-12) at 102:6-103:6. In fact, Boyd thought that there was nothing that Sanders "could have done to prevent the accident." Id. at 30:3-5. Sanders, she said, "tried to prevent the accident as best she could." Id. at 30:14-16. Boyd did not even know that she had sued the Sanders estate until Cooper Tire informed her of that fact in the deposition. Id. at 28:15-29:3. She could not explain why she had. Id. (By contrast, she understood that she had sued Cooper Tire and she clearly articulated her reasons for doing so: because they sold a "bad tire." Id. at 63:8-19.) Fletcher was aware that the Sanders estate was named as a defendant, but she, like Boyd, did not know why, as she thought her aunt drove safely and carefully "[t]o the best of her ability" and did nothing wrong. K. Fletcher

9

Dep. (Doc. No. 1-13) at 46:2-47:3.  The administratrix of Carter's estate could also not explain why she had sued the estate of Carter's wife.  <u>See</u> D. Fletcher Dep. (Doc. No. 1-14) at 81:9-88:21.

These depositions are relevant for several reasons. For one, they reveal that the actual plaintiffs did not knowingly authorize their attorneys to bring the claim against the Sanders estate.  Under the Alabama Rules of Professional Conduct, "A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued."  Ala. R. Prof. Conduct 1.2(a).  Here, it is clear that the attorneys did not, at even the most basic level, consult with their clients as to which claims should be pursued.  Of course, the court recognizes that in some instances, a case can be so complex (say, an antitrust case) that a lawyer could not reasonably be expected to ensure his client understands all of the claims being pursued on his behalf and it is

10

entirely reasonable that the client entrust the lawyer with those decisions. But, this is not one of those cases. This case involves a simple car crash and, here, it is obvious that the actual clients themselves had no interest in suing the estate of their family member who drove them on the day of the accident. That is compelling evidence of fraudulent joinder.

More importantly, the depositions constitute actual, affirmative, and, critically first-hand evidence that the claim against the estate has no merit. Two of the three plaintiffs, Boyd and Fletcher, rode in the car that this lawsuit charges was driven recklessly, and, here, they have shown that they believe that no such reckless driving actually occurred. If this case were to proceed to trial, Boyd and Fletcher would surely be called to testify and their perceptions of the accident would be admissible evidence. Based on evidence from two witnesses who were not only present at the accident but also have testified against their own interest in seeking recovery, this claim does not have plausible merit. In

11

sum, the plaintiffs not only lack any admissible evidence supporting plausible merit, but they have actually put into the record affirmative evidence that their claim is meritless.

The plaintiffs' attorneys argue that the disastrous deposition transcripts are not as bad for the plaintiffs as they first appear because, they explain, despite what the transcripts may seem to say, the plaintiffs were actually doing nothing more than indicating that they lack personal knowledge of the facts underlying their claim and they want their attorneys to speak on their behalf regarding factual matters. After the depositions occurred, the attorneys submitted affidavits signed by their clients stating the following: "I have no independent knowledge regarding the legal claims that have been asserted on my behalf by my attorneys" and "I have relied on my attorneys to pursue any and all claims on my behalf." Boyd Aff. (Doc. No. 14-12); K. Fletcher Aff. (Doc. No. 14-8) (same); D. Fletcher (Doc. No. 14-7) (same). According to the plaintiffs' attorneys, the

12

situation is like that in <u>Shields v. Washington Nat'l Ins. Co.</u>, 375 F. Supp. 2d 1346 (M.D. Ala. 2005) (Albritton, J.).   There, when the plaintiff was asked what the allegedly fraudulently joined defendant did wrong, he answered, "I'll leave that up to my attorneys." <u>Id</u>. at 1350.[3]   Despite the attorneys' attempted gloss on what happened here, the two cases are nothing alike.   The plaintiff in <u>Shields</u> referred factual matters to his attorneys to explain on his behalf; by contrast, the plaintiffs here stated, based on their own first-hand perceptions, what they thought the facts were: that Sanders drove as safely as possible and did nothing

_____

3.   In that civil fraud case, the plaintiff also answered "no" when asked whether the defendant made any false statements or concealed information, but, as the district court explained, that answer was not inconsistent with the "innocent fraud" claim the plaintiff asserted, which charged that the defendant passed along a brochure that misled the plaintiff because of contextual circumstances even though the defendant did not himself make misleading statements.   <u>See Shields</u>, 375 F. Supp. 2d at 1349-50.

wrong.[4]   To the extent that the affidavits attempt to contradict and erase the damaging deposition testimony, they are unavailing.  Cf. Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 656 (11th Cir. 1984) ("Although there may be some occasions where a party may by affidavit clarify testimony given in his deposition ..., we ... hold a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation.").

The plaintiffs, seeming to recognize that the complete lack of evidence supporting the claim against the Sanders estate is problematic, note that they had not yet taken depositions of the investigating police officer

---

4.  The plaintiffs also turn to Maxwell v. E-Z-Go, a Div. of Textron, Inc., 843 F. Supp. 2d 1209 (M.D. Ala. 2012) (Fuller, J.), but that case is no more availing. That case involved the plaintiff's lack of personal knowledge regarding the facts underlying his claim.  As explained, here, the testimony involved in this case does not evince a lack of personal knowledge but rather evinces personal knowledge that the claim asserted is meritless.

or "any expert accident reconstructionist" and
circumstances may be different if they had done so.
Pls.' Br. (Doc. No. 14) at 12.  In cases like this, where
the plaintiffs argue that they need further discovery,
the plaintiffs "must be able to provide some showing that
[their] claim against the resident defendant ... is
likely to have evidentiary support after a reasonable
opportunity for further investigation or discovery."
Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1119
(M.D. Ala. 1996) (Thompson, J.).  Here, the court cannot
be blind to the fact that discovery in this case has been
ongoing for a full year.[5]  Indeed, when Cooper Tire
removed the case to this court, the state court had
already ordered that discovery conclude in a little over
two months.  If there is indeed evidence supporting a
claim against the Sanders estate for negligent driving,
it strains credibility to imagine that the evidence had

_____

        5.  The case began in state court in March 2012.  The
same day the case began, the plaintiffs began sending
discovery requests to Cooper Tire.  Cooper Tire removed
the case to this court in March 2013.

not been uncovered in a year of discovery but would be in the final remaining two months. That is particularly true here, where the actual eyewitnesses to the accident, the plaintiffs themselves, claim that the driving was safe and without fault. The plaintiffs, through their attorneys, provide no particulars as to what they think they will uncover and how it will support their claim. While the attorneys still make promises that the claim will be supported some time later, those promises are naked ones. Because the plaintiffs have not adequately shown that the case against the Sanders estate is likely to survive with further opportunity for discovery, there seems to be no reasonable possibility that the claim will have merit and the court must conclude that the estate has been fraudulently joined.

While the court finds fraudulent joinder on the basis of the claim lacking plausible merit and not being reasonably likely to become meritorious after further discovery, it is worth noting that there are additional circumstances supporting the fraudulent joinder finding.

16

For one, even if one were to assume a declaration of liability against the estate may be obtained, it seems that recovery of monetary compensation, which is what the plaintiffs ostensibly seek in this lawsuit, is a complete impossibility.  The administratrix for the Sanders estate testified that the estate currently has no assets.  See Smith Dep. (Doc. No. 1-15) at 18:1-19:18.  Although the estate has filed a crossclaim against Cooper Tire which may have merit, even if that claim results in recovery, the funds the estate receives will pass directly to Sanders's heirs and will not be recoverable by the plaintiffs.  See Steele v. Steele, 623 So. 2d 1140, 1141 (Ala. 1993) ("[D]amages awarded pursuant to [the Alabama Wrongful Death Act] are distributed according to the statute of distribution and are not part of the decedent's estate.").  Sanders did not have any insurance that may pay out claims against her.[6]  In short, there is

---

        6.  In their brief, the plaintiffs erroneously stated that Sanders "has liability insurance."  Pls.' Reply Br. (Doc. No. 21) at 13 n.8.  The undisputed evidence in the
(continued...)

17

nothing in the record indicating that the plaintiffs could in any way recover from the Sanders estate. The plaintiffs do not argue otherwise, apparently conceding that doing so is impossible. While the inability to recover is by itself not enough to find fraudulent joinder, it nevertheless buttresses the fraudulent joinder finding the court has already made. See Myers v. Air Serv Corp., 2008 WL 149136, at *2 (E.D. Va. Jan. 9, 2008) (Kelley, J.) ("A defendant's inability to pay a judgment, without more, does not render his joinder fraudulent.... [T]he crucial question pertains to the likelihood of liability, not the likely success of collection efforts.").

Second, there is no evidence in the record that the plaintiffs have pursued any discovery against the estate,

_____

6(...continued)
record actually shows that Sanders was completely uninsured at the time of the accident. First Acceptance Records (Doc. No. 25-3); see also Smith's Initial Disclosures (Doc. No. 25-2) at 5 (disclosing lack of insurance). That the plaintiffs were unaware of that after a year of discovery is telling.

although they have had a year to do so.  During Cooper Tire's deposition of the estate's administratrix, the plaintiffs did not ask a single question even though the prior questioning did not touch upon the ability of the estate to pay a judgment.  If the plaintiffs were truly seeking recovery from the estate, it stands to reason that they would have pursued discovery on that topic. The record reveals no indication that they had.

Third, there is a legal dispute in this case that seems to be probative, that is, whether Alabama's so-called "guest statute" (1975 Ala. Code. § 32-1-2) should apply here.  Under that statute, speaking generally, a person offering a ride to another without payment therefor cannot be held liable for injuries the guest incurs in an accident unless a very high legal standard is met.  See, e.g., Coffey v. Moore, 948 So. 2d 544 (Ala. 2006) (discussing the statute).  If the statute applies in this case, it is very unlikely that the estate will be held liable.  (And it would also increase the chance of this court finding that the estate was fraudulently

19

joined, as it would mean that the plaintiffs brought a claim with a very unlikely chance of success.)  On the other hand, if the statute does not apply, ordinary negligence law principles do instead, and there is a far greater possibility that the estate could be declared liable.  (And a corresponding lesser chance of this court finding fraudulent joinder, as the claim would appear more likely to have potential merit.)

It is unnecessary to recount the various legal arguments for whether the guest statute should apply or not, as the answer is besides the point at this stage.  See Crowe, 113 F.3d at 1538 ("[T]he jurisdictional inquiry must not subsume substantive determination.").  For the reasons already explained, regardless of which legal standard applies, the evidence in the record shows that their claim is meritless either way.  Instead, the point is this: Although the argument that the guest statute should apply is at least colorable, the defendant estate, on the contrary, has taken and argued the same position as the plaintiffs, that the guest statute does

20

not apply and the estate should be open to liability. The estate has gone further even, arguing that, under the standing doctrine, Cooper Tire cannot invoke the defense on the estate's behalf when the estate chooses not to. It is not often that a plaintiff and a defendant coalesce to jointly argue for the defendant's exposure to liability. This evidence of collusion between the plaintiffs and the Sanders estate further establishes that the claim between them is, at best, a sham.

In sum, the plaintiffs themselves, as opposed to their lawyers, do not understand why they have sued the estate of their family member and one plaintiff was surprised to learn that she had; after a full year of discovery, the plaintiffs have not yet identified any admissible evidence supporting the claim their lawyers asserted on their behalf against the estate; the only relevant and admissible evidence in the record indicates that the claim is most likely meritless; there has been no reasonable showing that the plaintiffs will uncover actual supporting evidence later; the plaintiffs seem to

have never bothered to look into whether actual recovery from the estate is a possibility and they now do not challenge the conclusion that recovery is impossible; and, finally, the estate's conduct in this litigation raises suspicions about possible collusion with the plaintiffs to defeat diversity jurisdiction.  The lack of plausible merit alone is enough to find fraudulent joinder, but here, in light of those other circumstances, the conclusion is obvious; deciding otherwise would require this court to "suspend reality" and "shelve common sense."  Roe v. Michelin North America, Inc., 613 F.3d 1058, 1062 (11th Cir. 2010) (quoting Roe v. Michelin N. Am., Inc., 537 F. Supp. 2d 995, 999 (M.D. Ala. 2009) (Thompson, J.)).

Although the Sanders estate has been fraudulently joined, the court will not dismiss the estate from the case.  That is because the estate has asserted a crossclaim against Cooper Tire.  Rather than dismissal, it is more appropriate here to realign the parties so that the estate is named as a plaintiff and may, like the

other plaintiffs, pursue the products-defect claim against Cooper Tire. See <u>City of Vestavia Hills v. General Fidelity Ins. Co.</u>, 676 F.3d 1310, 1313-14 (11th Cir. 2012) ("[P]arties cannot avoid diversity by their designation of the parties.... [I]t is the duty of the lower federal courts to look beyond the pleadings and arrange the parties according to their sides in the dispute.") (punctuation, emphasis, and citation omitted).

## B. Robert Simmons

Again, the court will determine whether "there is [a] possibility that the plaintiff[s] can prove a cause of action against" Simmons. <u>Triggs</u>, 154 F.3d at 1287. Here, the plaintiffs charge that Simmons, who sold Carter the car involved in this case and provided subsequent maintenance, negligently failed to identify a defect in the tire or other dangerous condition of some sort when he should have done so. Before the court is evidence that Simmons, as alleged, sold Carter the car and subsequently provided certain maintenance. It has also been shown that, during the maintenance, he completely

omitted examining the tire that is alleged to have been
defective.  What has not been shown, however, is that,
even if Simmons had examined the tire in question, there
would have been some reasonable possibility of his
identifying a defect or other dangerous condition.  Under
basic principles of negligence law, if the danger in
question was not reasonably identifiable, no liability
will be imposed on a person who failed to find it.  Cf.
Tucker v. Wal-Mart Stores, Inc., 89 So. 3d 795, 801 (Ala.
2012) ("[A] customer asserting delinquent inspection on
the part of a storekeeper must still prove that the
foreign substance was on the floor for a sufficient
period of time that an adequate inspection would have
discovered it.").  Whether the alleged danger in question
is one that Simmons should have been expected to find
with due care cannot be discerned from the record before
this court.  In fact, the record contains entirely no
evidence about the sort of defect or other dangerous
condition the tire is alleged to have had.  If not a
defect in the tire itself, the record contains no

24

evidence as to what it is that Simmons should have uncovered but failed to.  There is, in short, no actual evidence of what Simmons did wrong, and without such evidence, the claim lacks plausible merit.[7]

In response, the plaintiffs state only that they "have not had an opportunity to depose Mr. Simmons," implying that such a deposition may result in material evidence to support the negligence claim, and, therefore, there is "a possibility of recovery" against him.  Pls.' Reply Br. (Doc. No. 21) at 15-17.  Again, the plaintiffs do not make a reasonable showing that further discovery is likely to change anything.  Once again, the promise of

---

7. Cooper Tire made this lack-of-evidence argument only briefly, see Def.'s Resp. Br. (Doc. No. 20) at 8, instead focusing the bulk of its briefing on whether Simmons had a legal duty to inspect all four tires on the car or whether his duty was more limited to only the single tire Carter had asked him to inspect (which was different from the one the plaintiffs now contend was defective).  That legal dispute, however, misses the more important issue: whether, had Simmons examined the tire in question (regardless of whether he had a legal duty to do so), he could have reasonably discovered any defect or other problem.  If there is no evidence that he reasonably could have discovered anything wrong with the tire, the claim lacks merit under state law regardless of whether he had a legal duty to examine the tire or not.

future evidentiary support is a naked one made without any details as to what the plaintiffs think they will uncover. After a full year of discovery and in the final weeks before trial, that is not enough.[8] In short, the plaintiffs have failed to show that the claim against Simmons has plausible merit, and therefore, the court must conclude that Simmons has been fraudulently joined.

Additionally, there are other reasons to find that Simmons has been fraudulently joined. Once again, although the plaintiffs' attorneys argue that there is a potential claim against Simmons, all of the plaintiffs

---

8. In fact, the court is having difficulty discerning what the theory of recovery against Simmons actually is. After this court first stated its understanding that the plaintiffs were charging Simmons with failing to identify a defect in the tire that Cooper Tire was responsible for through negligent manufacturing or design practices, the plaintiffs rebuffed the court, stating that, "Plaintiffs allege that Simmons should have inspected for any dangerous condition." Pls.' Br. (Doc. No. 30) at 9 (emphasis in original). Notably, the plaintiffs still do not explain what sort of dangerous condition Simmons was supposed to have found. It is telling that at this late stage in the litigation, the plaintiffs speak in utter generalities and cannot articulate with clarity the claim they are pursuing, let alone provide the court with supporting evidence. That is itself probative of fraudulent joinder.

26

themselves have stated unequivocally that they do not personally believe that Simmons committed any wrongdoing. Their deposition testimony regarding Simmons was similar to their testimony regarding the Sanders estate. When asked if she knew anything that Simmons "did wrong in this, leading up to the accident," Boyd answered, "No." Boyd Dep. (Doc. No. 1-12) at 62:5-10. At the time of her deposition, she was not even aware that she had sued Simmons. Id. at 61:12-16. Asked if she knew "any reasons why [she] would sue Simmons," she said that she did not. Id. at 62:13-18. Similarly, when asked what she thinks Simmons "did wrong," Fletcher answered, "Nothing." K. Fletcher Dep. (Doc. No. 1-13) at 92:17-93:2. Finally, the administratrix for Carter's estate was aware that she had sued Simmons, but she did not know why. D. Fletcher Dep. (Doc. No. 1-14) at 39:25-40:7. The administratrix did not know of anything Simmons "did wrong." Id. at 40:8-16. She sued Simmons only "[a]t the direction of [her] attorney." Id. Again, the record reflects that attorneys for the plaintiffs have caused

27

their clients to sue a person the plaintiffs have no personal interest in suing.

Finally, there is one additional issue that warrants mention although it does not factor into the court's fraudulent joinder analysis: According to Simmons, after this lawsuit was filed, the administratrix for Carter's estate approached him after church, said, "I'm sorry but I'm not really after you, I'm after Cooper Tire," and she then hugged him. Simmons Decl. (Doc. No. 1-16). The administratrix, through an affidavit submitted by her attorneys, disputes that this occurred. As the matter is disputed, the court accepts the plaintiff's version that no such thing occurred, but nevertheless thinks, given the other circumstances of this case, that the allegation warrants passing mention.

In sum, there is insufficient evidence in the record to establish that the claim against Simmons has even plausible merit. It is apparent that Simmons was named as a defendant in this lawsuit solely for the purpose of

destroying Cooper Tire's right to have this case litigated in federal court. Simmons will be dismissed.


## IV. CONCLUSION

Although proving fraudulent joinder requires a heavy burden to be satisfied and the court must err on the side of remand, this is the case in which the burden has been met. The record here shows that the claims against the Sanders estate and Simmons are, in basic terms, not 'for real' and that these two defendants have been fraudulently joined. To conclude otherwise in the face of the above-recounted overwhelming evidence would require this court to close its eyes to the obvious. While the fraudulent joinder standard is high, it is not so high as to require the court to ignore reality. Accordingly, this court will retain jurisdiction under 28 U.S.C. § 1332 over the real dispute in this lawsuit: the claims of the plaintiffs and the Sanders estate, all citizens of Alabama, against Cooper Tire, a citizen of Delaware and Ohio.

**\*\*\***

Accordingly, it is ORDERED as follows:

(1) The motion to remand (Doc. No. 14) filed by plaintiffs administratrix of the estate of Frank Carter, Kwamika Fletcher, and Rosita Boyd is denied.

(2) Defendant Robert Simmons (d/b/a Simmons Used Cars) is dismissed and terminated as a party.

(3) Defendant estate of Tara Denita Sanders is realigned as a plaintiff.

DONE, this the 25th day of July, 2013.

   /s/ Myron H. Thompson   
UNITED STATES DISTRICT JUDGE